IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **BRENDA L. METZGER,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 5:09-00913 |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401- 433, 1381- 1383f. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Document No. 11.) and the Defendant's Motion for Judgment on the Pleadings (Document No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Brenda L. Metzger (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on January 16, 2008 (protective filing date), alleging disability as of December 31, 2001, due to obesity, sleep apnea, depression, foot and hand problems, high blood pressure, osteoarthritis in both feet, and chronic low back pain.[1] (Tr. at 9, 38, 83-86, 87-89, 116, 132.) The claims were denied initially and upon reconsideration. (Tr. at 38-40, 51-53, 54-56.) Claimant

---

[1] In her request for reconsideration, Claimant alleged the following additional disabling impairments: Hepatitis C, restless leg syndrome, depression, and suicidal thoughts at times. (Tr. at 51.)

requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 57-60.) The hearing was held on November 14, 2008, before the Honorable Thomas R. King. (Tr. at 18-33.) By decision dated February 19, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-17.) The ALJ's decision became the final decision of the Commissioner on July 2, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On August 11, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e),

2

416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

>factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>	(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>	(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, December 1, 2006. (Tr. at 11, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, sleep apnea, and osteoarthritis of the lower extremities," which were severe impairments. (Tr. at 11, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 12, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform the full range of sedentary work. (Tr. at 13, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 16, Finding No. 6.) Pursuant to Medical-Vocational

Guideline 201.19, the ALJ determined that Claimant was "not disabled." (Tr. at 16-17, Finding No. 10.) On this basis, benefits were denied. (Tr. at 17, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 7, 1961, and was 47 years old at the time of the administrative hearing, November 14, 2008. (Tr. at 16, 22, 83, 87.) Claimant had an eleventh grade education and was able to communicate in English. (Tr. at 16, 22, 131, 137.) In the past, she worked as a health care provider, deli worker, foster parent, bus driver, and title clerk. (Tr. at 32-33, 106-15, 119-30, 133-34.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will summarize it below as it relates to Claimant's claims.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the ALJ's decision is not supported by substantial evidence because the ALJ erred in applying the Grids to determine whether work existed in significant numbers in the national economy that Claimant could perform rather than eliciting testimony from the VE regarding the work. (Document No. 12 at 2-4.) Claimant asserts that because the ALJ determined that her sleep apnea was a severe impairment

Analysis.

At the fifth stage in the sequential evaluation process, after the Claimant has made a prima facie showing of a disability that prevents him from engaging in his prior work activity, the burden shifts to the Commissioner, who must show that the Claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, which job exists in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002); Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976). To answer this inquiry, the Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant, 699 F.2d at 191-92; see generally 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2008). Each grid considers only the strength or "exertional" component of a claimant's

disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2008). The grid rules reflect the number of unskilled jobs at the various exertional levels. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(b) (2008) ("[t]he existence of jobs in the national economy is reflected in the 'Decisions" shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels."). "Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." Id.

Rule 201.19 provides that a younger individual (age 45-49), with a limited or less education, whose previous work experience was skilled or semiskilled - not transferable, and who is capable of performing a full range of sedentary work, is deemed not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.19 (2008). Accordingly, the undersigned finds that the ALJ's reliance on these Rules as a framework for his decision is supported by substantial evidence of record.

Claimant alleges that the ALJ erred in applying this Rule and not eliciting the testimony of the VE regarding the ability to perform work because her sleep apnea condition and its related limitations are nonexertional impairments.

In Grant, 699 F2d. at 192, the Fourth Circuit held that an ALJ erred when he applied the Grids, despite the fact that Claimant suffered from the exertional impairment of hemiparesis, together with the nonexertional impairments of low intelligence and impaired dexterity. The Court reasoned that

> the regulations provide that the grids may not be conclusively applied where nonexertional impairments exist in tandem with exertional impairments; instead individualized consideration must be given....Manifestly, if [a claimant] demonstrates the presence of nonexertional impairments, the Secretary, in order to prevail, must

> be required to prove by expert vocational testimony that, despite [the claimant's] combination of nonexertional and exertional impairments, specific jobs exist in the national economy which he can perform. The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments. To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the grids may not be relied upon to demonstrate the availability of alternative work activities. Instead, in such cases the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy. See Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975) (requiring expert vocational testimony).

The Commissioner argues that Claimant's sleep apnea was treated successfully with the assistance of a C-PAP and that Claimant failed to identify any functional limitation resulting from her condition that the ALJ failed to consider. (Document No. at 7-9.) The record and the ALJ's decision reflect that Claimant's sleep apnea was treated with a C-PAP, and that Claimant reported on September 18, 2007, to having slept better with the machine. (Tr. at 15, 233.) As a result of the sleep apnea, Claimant reported that she was fatigued and at least one doctor opined that her condition impacted her ability to travel. (Tr. at 15-16, 301.) The ALJ acknowledged Claimant's reported fatigue, but noted that Claimant had not had her C-PAP levels adjusted in "years." (Tr. at 16.) The Commissioner asserts that Claimant falsely reported to the Williamsburg Health Clinic between December 2007 and February 2008 that the C-PAP setting had not been adjusted in years. (Tr. at 245, 248.) The Commissioner points out that Claimant had obtained the C-PAP only after her August 2007 sleep study. (Document No. 15 at 8.) The ALJ's decision reflects Claimant's reports of fatigue due to an inability to sleep and the need to lie down three to four times during the day due to inter alia, fatigue and interrupted sleep due to sleep apnea. (Tr. at 15-16.) The ALJ noted however, that Claimant had not had her C-PAP evaluated in "years" to determine if the settings were correct or needed adjustment. (Tr. at 16.) Regardless, the evidence presented to the Appeals Council

indicated that in March 2009, Claimant was unable to have her C-PAP recalibrated because she had no medical insurance. (Tr. at 355.) On April 15, 2009, Claimant reported to Seneca Health Services that she napped during the day which affected her sleep cycle at night and that she used the C-PAP incorrectly because the mask was broken. (Tr. at 352.) Despite the Commissioner's arguments to the contrary, though this evidence post dates the ALJ's decision, the Court finds that it relates back to the relevant period and possibly would change the ALJ's decision.

Notwithstanding the new evidence however, the Court finds that the ALJ erred in relying on the grids when Claimant presented with a severe impairment of sleep apnea with functional limitations, which limitations were acknowledged by the ALJ and appear to be non-exertional in nature. Accordingly, the Court finds that remand of this matter is necessary to allow for the full development of Claimant's sleep apnea and associated limitations and a determination as to whether the limitations are exertional or non-exertional in nature.

By Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **DENIED**, the final decision of the Commissioner is **VACATED**, this matter is **REMANDED** for further consideration of Claimant's sleep apnea as indicated above, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2010.

R. Clarke VanDervort
United States Magistrate Judge